Opinion of the Court.

## Patrick Foley

*v.*

## Jeremiah McMahon.

Insurance—*when a provision for a third party.* Where a person had been engaged as a clerk in his uncle's store for many years, and for several years after becoming of age, for which he had received no wages, and the uncle procured a policy of insurance on the life of a friend, in the sum of $2000, and had the same made payable to his nephew, and also procured a similar policy on his own life, payable to the nephew, and, on the death of the friend, handed the policy to the nephew, who procured the money thereon, which he deposited with the uncle for safe keeping: *Held,* in an action by the nephew against the uncle for the money, that, from the facts, it would be presumed that the latter intended to make a provision for the benefit of his nephew, and that the plaintiff was entitled to recover the same, unless such presumption should be overcome by clear evidence to the contrary.

Appeal from the Superior Court of Cook county; the Hon. William W. Heaton, Judge, presiding.

Messrs. Dickey & Caulfield, for the appellant.

Messrs. Gardner & Schuyler, for the appellee.

Mr. Chief Justice Walker delivered the opinion of the Court:

It appears, from this record, that, about the 28th day of February, 1868, appellant procured a policy of insurance from the Security ¡Life Insurance and Amity Company of New York, on the life of Michael Hamilton. The language employed is this: "Do insure the life of Michael Hamilton, of Chicago, in the county of Cook, and State of Illinois, for the sole use of his friend Jerry McMahon, in the amount of two thousand dollars, for the term of his natural life."

On the death of Hamilton, appellant, who had kept the policy in the store, handed it to appellee, who was his nephew, and had lived with him since he was twelve years of age, and was clerking for him in his store when the policy was made,

and appellee took it to the office and received the sum of $1700 thereon, and receipted for it on the policy.

On the same day, appellee handed the money to his uncle, saying, as he testifies, that he did not wish to carry it around with him. Appellant denies that he made such a statement.

Appellant, we are inclined to think, paid the premium on the policy when it was taken. It also appears that appellee had, after coming of age, clerked a number of years for appellant, for which he was not paid anything, unless it was in the premium on this and another policy taken out at the same time on appellant's life, for the like use of appellee, on $1000, and a half interest which appellant allowed his nephew in the store. This occurred in May, 1869.

Some eight months after, the money was received on the policy, but when the partnership was formed nothing seems to have been said about this sum of money. After a demand on appellant for the money, appellee brought this suit. On a trial by the court and a jury, a verdict was returned in favor of appellee for the amount paid under the policy. A motion for a new trial was entered, but overruled by the court, and judgment was rendered on the verdict, from which this appeal is prosecuted.

It is insisted that the evidence fails to sustain the verdict; that appellant, with his own money, at his own instance and for his own use, procured the policy, and that he is entitled to the money. It is conceded that he proposed to take the policy; that he paid the premium and did all the business until it was delivered, but that it was for his own use is flatly contradicted by the language of the very policy which he obtained, and we must presume was made just as he desired it should be. That policy says the insurance is made for "the sole use of his friend Jerry McMahon." This language, employed at the instance of appellant, seems to leave no room for doubt that the money belonged to appellee. There is not even an attempt to show that anything was said or done to indicate, in the remotest degree, that it was intended by appellant to be for his own use.

Opinion of the Court.

Again, appellant seems to have effected a policy, at the same time, on his own life, for the use of appellee. Now, this could not have been for his own use, and yet he negotiated for and obtained that policy, and paid the premium, as on the other. This seems almost irresistible to prove that he was engaged in making a future provision for his nephew—undeniably so in the policy on his own life, and presumably so in the policy on Hamilton's life, because he had the insurance company say so in the policy. If designed for his own benefit, why, as a business man, did he not have it so expressed? This, of itself, is clear and satisfactory evidence, unless most undeniably overcome by other evidence. But appellee testifies that his uncle told him he was going to have the policies made for his use, nor does appellant, in his testimony, say that it was for his own use, nor is it at all certain that appellant paid his own money. Appellee had served him for years, for which appellant had paid him no wages, and several years of the time after appellee arrived at 21 years of age; and we may well suppose that, had appellant settled with him for his wages, these sums would have been insisted upon as payments, and any fair jury would have allowed it.

In addition to all this, a number of witnesses testify that appellant repeatedly said that the money was appellee's, and he would pay it to him when he should want it. The evidence, all considered, is strong and convincing to our minds, beyond all reasonable doubt, that the money was appellee's, and that appellant so understood it, as he repeatedly admitted. We fail to comprehend how the jury could have arrived at any other conclusion than they did. Had they done so, it appears, from the evidence, that the court below would not have hesitated to set aside the verdict, and submitted the case to another jury.

Nor do we see anything to indicate that appellee intended to present the money to appellant, and thus relinquish all claim to it. Appellant does not claim that he did. The transaction has the appearance of a deposit for safe keeping, and nothing more, and appellant's admissions clearly prove the fact.

The verdict being so manifestly right, we deem it unnecessary to examine the instructions, as in no point of view could or should the jury have found otherwise than they did with correct instructions, without any or even with erroneous instructions.

Justice is clearly done by the finding, and the judgment of the court below is affirmed.

*Judgment affirmed.*